UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW BROWN,

       Plaintiff,

v.                         Case No. 8:24-cv-2777-VMC-LSG

CSX TRANSPORTATION, INC.,

       Defendant.

_____/

**ORDER**

This matter is before the Court on consideration of Defendant CSX Transportation, Inc.'s Motion for Summary Judgment (Doc. # 174), filed on October 14, 2025. Plaintiff Andrew Brown responded on November 12, 2025. (Doc. # 180). CSX replied on November 26, 2025. (Doc. # 186). For the reasons that follow, the Motion is granted in part and denied in part.

I.   **Background:**

    A.   **The Parties**

"CSX is a freight railroad headquartered in Jacksonville, Florida that has approximately 23,000 employees." (Johnson Decl. at ¶ 1). Mr. Brown began working for CSX as a conductor in July 2006. (Pl. Depo. at 27:2-5). Mr. Brown worked in CSX's Train & Engine ("T&E") service, and

1

the terms of his employment were governed by a collective bargaining agreement ("CBA"). (Doc. # 15-11 at ¶ 2).

**B.** **Staffing and Scheduling Procedures for T&E Employees**

CSX "operates a 365-days-a-year business," which requires some employees to work on weekends and holidays. (Doc. # 152 at ¶ 1). T&E employees like Mr. Brown "do not work a set schedule and instead are called to work on an as-needed basis." (Doc. # 15-3 at ¶ 6; Pl. Depo. at 29:9-30:3). "T&E employees indicate that they are available for work by 'marking up' for it, and indicate that they are not available for work by 'marking off.'" (Doc. # 15-3 at ¶ 6). If an employee marks off from work for FMLA leave, "the leave period starts when the employee marks off from work and ends when the employee marks back up for work." (Id.).

Many T&E employees are assigned to "pools" that operate trains between two or more locations. (Doc. # 15-11 at ¶ 3). Mr. Brown's pool operated trains between Jacksonville and the Tampa area. (Pl. Depo. at 39:23-40:1). Employees in a pool are placed on a board based on when they returned to their home terminal and are called in to work on a rotating basis. (Doc. # 15-11 at ¶ 3). "When a train is ready for departure, the employee at the top of the board is called to work."

(Id.). "Federal law prohibits employees who operate trains from being on duty for more than 12 consecutive hours, and requires at least 10 consecutive hours of rest between on-duty periods." (Id. at ¶ 4). "Accordingly, upon arriving at the away-from-home terminal, employees in pool service often stay overnight for their federally-mandated rest period, and are then called to operate a train back to their home terminal sometime later." (Id.). When Mr. Brown was assigned to a pool, he was on-call 24 hours a day unless he was marked off for some reason or on required rest. (Pl. Depo. at 29:17-31:2).

Although T&E employees had vacation days, the number of employees permitted to take vacation on any particular day was capped. (Id. at 25:10-26:12; Varecka Depo. at 68:13-69:7; Bright Depo. at 33:22-35:11). If T&E employees marked off as sick, they would be assessed points under CSX's Attendance Points System ("CAPS"), which could lead to discipline. (Doc. # 15-11 at ¶ 11; Doc. # 15-15). Points were not assessed if an employee took FMLA leave. (Doc. # 15-11 at ¶ 11). After CSX implemented this attendance policy in or around 2015, "requests for or the use of FMLA" "nearly . . . doubled or tripled." (2018 Jolanda Johnson Depo. at 49:14-50:2).

C.    **CSX Disciplinary Procedures**

Pursuant to CSX policy, dishonesty is a dismissible offense. (Doc. # 174-17). The CBA sets forth the disciplinary process and procedures applicable to union members. (Doc. # 113-3 at ¶ 2). "The first step in the disciplinary process is to notify the employee in writing of the charges." (Id. at ¶ 3). "Then, unless the employee waives his right to a hearing and admits the misconduct, CSX holds a hearing on the charges." (Id.). "A CSX manager – known as the 'hearing officer' – conducts the hearing, questioning witnesses and ruling on evidentiary objections. A Company official – sometimes referred to as the 'charging officer' – testifies about the basis of the charges." (Id.). Charged employees can be represented by a union representative and present testimony and evidence in their defense. (Id. at ¶ 4; John Johnson Depo. at 13:13-16).

"After the hearing, the hearing officer may issue findings, but does not issue discipline." (Doc. # 113-3 at ¶ 5). "Typically, disciplinary decisions are made by either the General Superintendent for the Region or his designee, after receiving a recommendation from Labor Relations." (Id.). "The hearing officer's findings are not binding on the manager(s) who ultimately decide on discipline." (Id.).

An employee may challenge CSX's disciplinary determination by filing a grievance pursuant to the CBA. (Doc. # 15-11 at ¶ 17). The CBA establishes a "multi-step grievance process culminating in final and binding arbitration," in which the "arbitrator can reduce or overturn the discipline." (Id.).

Pursuant to the CBA, CSX may suspend an employee charged with a major offense, such as dishonesty, pending a hearing. (Id. at ¶ 15; Doc. # 174-17). The CBA also provides that employees must be charged within 10 days from the date the offense is discovered, and that CSX must make its disciplinary determination within 30 days of the hearing. (Doc. # 15-14 at 4, 8).

### D.    **Mr. Brown's Application for and Initial Use of FMLA Leave**

In May 2017, Mr. Brown applied for intermittent FMLA leave for "major depression and insomnia." (Doc. # 174-3 at 2). Mr. Brown's doctor estimated that Mr. Brown would need to take intermittent FMLA leave once a month for up to two days per episode due to his conditions. (Id.). CSX approved the application. (Pl. Depo. at 55:13-15).

FMLA leave is not to be used to avoid working on weekends or holidays. (2018 Jolanda Johnson Depo. at 195:7-11). In

August 2017, CSX sent Mr. Brown a warning letter after he used FMLA leave on four weekends over a six-week period. (Doc. # 174-4). Although Mr. Brown testified that he did not recall receiving that letter, he does not deny that it was sent or dispute its accuracy. (Pl. Depo. at 57:15-58:22; Doc. # 174-8 at 32:13-21). The letter stated that CSX had reviewed Mr. Brown's work history and determined that it appeared that he was misusing FMLA leave "as supported by [his] established pattern of marking off FMLA leave on the weekends, in conjunction with other days off (i.e. rest days, vacation days, etc.), holidays or other pattern as indicated on the attached page." (Doc. # 174-4 at 2). The letter further stated that continued FMLA misuse could lead to a disciplinary hearing. (Id.).

**E.    CSX Implements an Automated System for Identifying
         Employees to Investigate for FMLA Misuse**

In 2016, CSX implemented an automated process of identifying employees whose FMLA usage met certain criteria. (2018 Jolanda Johnson Depo. at 40:5-42:3). The purpose of this system was to identify employees who demonstrated a pattern of FMLA usage to extend their time off. (Id. at 42:16-46:16, 55:3-56:23, 59:2-62:23). The program identified employees who had used FMLA leave on the weekend or in

conjunction with any scheduled days off five times over the last 12 weeks. (Id. at 59:3-61:21, 69:5-70:4, 101:18-22). The criteria for what the program flagged as potential FMLA misuse were determined by looking at dates in which CSX had high FMLA usage. (Id. at 158:20-162:25). CSX Senior Benefits Manager Jolanda Johnson determined the criteria in collaboration with CSX's Labor Relations, Crew Management, and Law Departments. (Id. at 41:19-42:1, 44:3-9, 55:9-15).

Each week, Ms. Johnson receives an email with the names of flagged employees and conducts "an individualized review" of each employee's FMLA usage. (Id. at 38:19-40:10). In conducting this review, Ms. Johnson looks at the medical information on file, the FMLA usage that has been flagged, and any documentation that could support the pattern of FMLA usage. (Id. at 82:16-83:11). If Ms. Johnson suspects FMLA misuse after her individualized review, the employee is notified in writing that CSX has identified a pattern of suspected misuse and that their FMLA usage will continue to be monitored. (Id. at 99:12-101:8). If an employee continues exhibiting a pattern of using FMLA on weekends or to extend time off, the employee will receive a final warning letter, and, if the pattern continues, can lead to a formal reprimand and discipline up to dismissal. (Id. at 101:9-103:16).

**F.   CSX Investigation into Increased FMLA Usage During
the 2017-2018 Winter Holidays**

According to CSX, "an abnormally large number of T&E
employees marked off from work for what they claimed was FMLA
leave" during "Christmas 2017 and New Year's 2018." (Doc. #
113-2 at ¶ 2). "[A]s Christmas Day approached, the number of
FMLA mark-offs steadily increased, with approximately 800
employees – close to 10% of CSX's T&E workforce – marked off
on Christmas morning." (Id.). "By contrast, less than 200 T&E
employees were marked off for FMLA leave on the afternoon of
December 18, one week before Christmas." (Id.). "After
Christmas, employees who had marked off for FMLA leave marked
back up for work." (Id.). "FMLA mark-offs increased again
over the New Year's holiday, with approximately 400 T&E
employees marked off on New Year's Day." (Id.). Mr. Brown
does not dispute the amount of FMLA usage during this period
but asserts that it was not "abnormal" or "suspicious" and
suggests alternative explanations for the increase in FMLA
usage during this time. (Doc. # 180 at 4 ¶ 21). Mr. Brown
further asserts that "CSX lacked a baseline to determine what
was suspicious" as CSX did not systematically track FMLA usage
until 2016. (Id.) (citing 2018 Jolanda Johnson Depo. at 42:22-
43:23, 158:20-159:7, 161:15-23).

Due to the increased FMLA usage, CSX "believed that some employees used FMLA leave dishonestly" and investigated possible FMLA misuse. (Doc. # 113-2 at ¶ 3). For each employee who took intermittent FMLA leave over the Christmas or New Year's holidays, "CSX reviewed their recent leave history to determine whether it showed a pattern of marking off on holidays or other special occasions." (Id.). The look-back period for charges related to FMLA misuse on Christmas included "Father's Day, the Fourth of July, Labor Day, Columbus Day, Halloween, Veterans Day, Thanksgiving, the day after Thanksgiving, Christmas Eve, [and] Christmas Day." (Johnson Decl. at ¶ 3). CSX Senior Benefits Manager Jolanda Johnson conducted an "individualized review" of T&E employees who marked off for FMLA leave during four of the last ten holidays. (2018 Jolanda Johnson Depo. at 139:17-138:20, 141:12-20, 223:9-11; Johnson Decl. at ¶ 1). The review consisted of considering whether the employee had provided an explanation to justify his or her FMLA usage and, although Ms. Johnson has no medical background, "looking at the medical facts, looking at what the employee's approved for." (2018 Jolanda Johnson Depo. at 137:21-139:14, 141:12-20). Ms. Johnson did not charge with dishonesty T&E employees who had cancer, were terminally ill, or were about to give birth as

9

Ms. Johnson deemed these conditions sufficient to justify the usage of FMLA leave. (Id. at 144:19-146:5).

Mr. Brown disputes that Ms. Johnson conducted an individualized review of the employees and asserts that the employees were charged "mechanically, with no individualized investigation." (Doc. # 180 at 5 ¶¶ 22, 25). However, Mr. Brown does not cite to any record evidence that disputes Ms. Johnson's testimony that she conducted an individualized review of each employee prior to charging them with misconduct.

Out of the hundreds of employees who took intermittent FMLA leave over the 2017-2018 end-of-year holidays, CSX charged 123 with FMLA leave dishonesty over Christmas, with 81 subjected to discipline, and charged 54 employees with FMLA dishonesty over New Year's, with 38 disciplined. (Johnson Decl. at ¶¶ 4-5).

### G.    CSX Charges and Dismisses Mr. Brown for FMLA Leave Dishonesty

Mr. Brown took FMLA leave from the day before Thanksgiving until 12:46 a.m. on the day after Thanksgiving, when he had the first of two scheduled rest days. (Doc. # 174-11 at 20). Mr. Brown also took FMLA leave on Christmas Eve and Christmas Day 2017, followed by two consecutive rest

10

days. (Johnson Decl. at ¶ 6). Mr. Brown worked on December 28, 29, and 30, 2017. (Pl. Depo at 66:24-67:21). Mr. Brown took FMLA leave again on New Year's Eve and had New Year's Day off as a vacation day. (Johnson Decl. at ¶ 6).

By letter dated January 8, 2018, CSX scheduled a hearing on charges that Mr. Brown misused FMLA leave between December 22 and 26, 2017. (Doc. # 174-6 at 2). Mr. Brown was suspended from service pending the hearing. (Id.). The letter informed Mr. Brown of his right to representation as set forth in the CBA and that he could present witnesses in his defense. (Id.). One week later, CSX sent Mr. Brown a second letter scheduling a hearing on his alleged misuse of FMLA leave between December 30, 2017, and January 2, 2018. (Doc. # 174-7).

At the hearing on the Christmas holiday charge, Ms. Johnson explained that Mr. Brown was charged with violating CSX Operating Rule 104.2(a), which prohibits employee dishonesty, and CSX's FMLA policy by using FMLA leave on December 24 and 25, 2017, to avoid working on holidays. (Doc. # 174-8 at 28:13-29:33). Ms. Johnson testified that the charge was based on three factors: (1) "the high FMLA utilization [CSX] experienced over the Christmas holidays in 2017"; (2) "an individualized review of Mr. Brown's FMLA usage over the recent holidays and other events"; and (3) the fact that Mr.

11

Brown was sent "a counseling letter in August of 2017 in regards to how he was using his FMLA" either before or after his rest days and on weekends. (Id. at 22:6-12, 32:30-33). Regarding the individualized review, Ms. Johnson explained that she looked "at how Mr. Brown was off over the recent holidays," including, Thanksgiving and Black Friday, followed by a rest day, and Christmas Eve and Christmas Day, followed by rest days. (Id. at 23:33-44). Ms. Johnson concluded that, "based on the facts and circumstances surrounding the FMLA utilization that occurred specifically on 12/24 and 12/25/2017, it was clear that Mr. Brown misused FMLA by using FMLA to avoid working over the Christmas holiday in 2017." (Id. at 24:4-7). When asked by Mr. Brown's union representative if there was any way Ms. Johnson could know when Mr. Brown's serious health condition would manifest, Ms. Johnson merely reiterated her position that "using FMLA to avoid working holidays is not the purpose of FMLA" and "it is FMLA misuse or fraudulent use." (Id. at 30:35-45). Ms. Johnson acknowledged that Mr. Brown had a serious health condition that caused "unforeseeable" episodes but nevertheless explained that he was subjected to disciplinary charges because "he has consistently used FMLA on holidays or other events." (Id. at 39:27-32).

12

Mr. Brown testified in his defense, stating that he worked on December 22 and 23, 2017, but took FMLA leave on December 24 because he "wasn't in a present state to be working that day" due to personal issues. (Id. at 41:38-40, 43:35-43). Mr. Brown denied misusing FMLA leave and maintained he only used it when he needed it. (Id. at 43:2-3). Mr. Brown further explained why he took FMLA leave on Christmas Eve and Christmas Day as follows:

> I don't feel I've misused FMLA for marking off for Christmas Day. It's just, I wasn't in the right frame of mind. It's just been a rough year, and the holidays has made it a lot worse. And there was no way I was able to perform my duties on that day that I needed to perform safely. It's just, when you're used to having something a certain way every year for the same holidays, it's just rough. And this is one of the first years it's been different. Like I said, I don't, I don't even like the holidays right now. So I feel like I didn't, I wasn't being dishonest when I marked off FMLA.

(Id. at 47:25-34). Mr. Brown did not call any other witnesses or offer any documentary evidence in his defense. (Id. at 47:12-16).

After the hearing, hearing officer A.J. La Force found that the charge of violating Operating Rule 104.2(a) was proven as the testimony of Ms. Johnson and CSX trainmaster Ramon Woods "clearly show [Mr. Brown] marked off FMLA on Holiday to avoid working" and that Mr. Brown had received

"many warnings" about FMLA misuse. (Doc. # 174-23). CSX's Director of Labor Relations, Melissa L. Wheaton, reviewed the hearing record and recommended discipline of "30 days/time served based on similarly situated employees handled in these investigations." (Doc. # 174-24). Ms. Wheaton noted that Mr. Brown did not offer medical documentation to support his FMLA leave on Christmas Eve and Christmas Day. (Id.). CSX's General Superintendent for the South, William Charles Blanchetti, Jr., also reviewed the hearing transcripts and agreed with Ms. Wheaton's recommendation. (Blanchetti Depo. at 12:18-13:17; Doc. # 174-12). Mr. Brown remained out of service pending the outcome of his hearing on the New Year's Eve charge. (Id.).

At the hearing on the New Year's Eve charge, CSX Human Resources Manager Tremaylen Anderson testified that Mr. Brown was charged with violating Operating Rule 104.2(a) and CSX's FMLA policy for taking FMLA leave on December 31, 2017. (Doc. # 174-10 at 20:16-21, 21:45-22:18, 26:11-13). Ms. Anderson stated that the grounds for the charge were the high FMLA utilization among CSX employees on New Year's Eve and New Year's Day as well as Mr. Brown's FMLA usage over recent holidays. (Id. at 22:20-23:4). Ms. Anderson stated that a review of Mr. Brown's FMLA usage from June 15, 2017, through

14

January 3, 2018, showed that he "consistently used FMLA to avoid working holidays on other events." (Id. at 23:8-14). Mr. Brown did not provide any information showing that he took his FMLA leave for an approved use. (Id. at 26:6-9). Mr. Brown denied violating the Operating Rule or misusing FMLA leave on New Year's Eve, stating that he used FMLA leave "as it was intended, prescribed by my doctor." (Id. at 30:40-31:4, 32:18-24, 35:11-13). Mr. Brown did not call any other witnesses or introduce any documentary evidence. (Id. at 34:42-35:2).

The hearing officer, Mr. La Force, found that the testimony of CSX's witnesses showed that Mr. Brown misused FMLA leave by marking off on New Year's Eve and that Mr. Brown "was warned formally no less than 3x that pattern holiday layoff could be handled as [misuse]." (Doc. # 174-25). After reviewing the hearing record, Ms. Wheaton recommended that Mr. Brown be terminated. (Wheaton Depo. at 73:3-22). Mr. Blanchetti reviewed the hearing transcript and agreed with Ms. Wheaton. (Blanchetti Depo. at 13:4-17; Doc. # 174-13). By letter dated February 22, 2018, CSX informed Mr. Brown that he was terminated based on CSX's determination that he violated Operating Rule 104.2(a) on New Year's Eve. (Id.).

Mr. Brown's union challenged CSX's disciplinary
decisions, which were upheld at arbitration before the Public
Law Board. (Doc. # 93-3 at 37-38, 40-44). Regarding the
Christmas holiday charge, the arbitrator determined that Mr.
Brown "was afforded a fair and impartial hearing" and that
there was "sufficient evidence in the record to support the
finding that [Mr. Brown] violated [CSX's] Operating Rule
[104.2(a)]." (Id. at 38). Regarding the New Year's charge and
dismissal, the arbitration panel found that the
"circumstantial evidence and the reasonable inference to be
drawn there from would lead a reasonable person to deduce
that the claimant's mark-off history exhibited a pattern that
he used FMLA leave solely to avoid working on holidays and to
extend his time off, and not for legitimate medical reasons."
(Id. at 43).

## H.    **Procedural History**

In the amended complaint, Mr. Brown alleges that CSX
violated his rights under the FMLA by subjecting him to the
CAPS attendance policy and by suspending and ultimately
terminating him for taking FMLA leave. (Doc. # 149 at ¶¶ 48,
51). The amended complaint asserts the following claims: FMLA
interference (Count I) and FMLA retaliation (Count II). (Id.

16

at ¶¶ 46-52). CSX filed an answer denying the allegations. (Doc. # 152).

Pursuant to the parties' joint stipulation (Doc. # 153), the Court dismissed Mr. Brown's claims related to the attendance policy. (Doc. # 161). Thus, only Mr. Brown's claims regarding his termination remain.

CSX moves for summary judgment on all claims. (Doc. # 174). Mr. Brown has responded (Doc. # 180), and CSX has replied. (Doc. # 186). The Motion is ripe for review.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if

it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex Corp., 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary

judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III.  **<u>Analysis</u>**

### A.    **<u>The FMLA</u>**

"The FMLA grants eligible employees a series of entitlements, among them the right to 'a total of 12 workweeks of leave during any 12–month period' for a number of reasons, including 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" <u>Jones v. Gulf Coast Health Care of Delaware, LLC</u>, 854 F.3d 1261, 1267 (11th Cir. 2017) (quoting 29 U.S.C. § 2612(a)(1)(D)). "To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." <u>Strickland v. Water Works & Sewer Bd. of City of</u>

19

Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001) (internal citations omitted).

"To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Id. at 1206–07. "In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Id. at 1207. "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Id.

### B.    **FMLA Retaliation**

Mr. Brown alleges that CSX violated the FMLA when it suspended and later terminated him for taking FMLA leave over Christmas and New Year's Eve 2017. (Doc. # 149 at ¶ 51).

CSX argues that it is entitled to summary judgment on the FMLA retaliation claim because "CSX has articulated a legitimate, non-discriminatory reason for his discipline – his dishonest use of FMLA leave – and [Mr.] Brown cannot show that it is pretext for retaliation. Nor can he demonstrate that, but-for a retaliatory motive, CSX would not have

disciplined him." (Doc. # 174 at 14-15). In response, Mr. Brown argues that summary judgment is not warranted as "a reasonable jury could find that CSX's investigation of [Mr.] Brown was insufficiently reliable to be worthy of credence." (Doc. # 180 at 13). The Court agrees with Mr. Brown.

"Claims of retaliation can be supported with either direct or circumstantial evidence." Lapham v. Walgreen Co., 88 F.4th 879, 889 (11th Cir. 2023). Where, as in the instant case, "a plaintiff alleging retaliation presents only circumstantial evidence and no direct evidence, we apply the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Lapham, 88 F.4th at 889.

Under the McDonnell Douglas framework, "the plaintiff bears the initial burden of proving his prima facie case." McAlpin v. Sneads, 61 F.4th 916, 927 (11th Cir. 2023). To do so, "the plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." Id. (internal quotation marks omitted). "If the plaintiff successfully establishes a prima facie case, 'the burden shifts to the defendant to proffer a legitimate reason for the adverse action.'" Id. (quoting

Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th
Cir. 2000)). "This responsive burden is a simple burden of
production that can involve no credibility assessment."
Lapham, 88 F.4th at 889 (internal quotation marks omitted).

If the defendant successfully rebuts the presumption,
the McDonnell Douglas framework "simply drops out of the
picture." Ismael v. Roundtree, 161 F.4th 752, 764 (11th Cir.
2025) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502,
511 (1993)). The inquiry then becomes "whether 'the record,
viewed in a light most favorable to the plaintiff, presents
a convincing mosaic of circumstantial evidence that would
allow a jury to infer intentional discrimination [or
retaliation] by the decisionmaker.'" Id. (quoting Smith v.
Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)).
"A convincing mosaic may be shown by evidence that
demonstrates, among other things, (1) suspicious timing,
ambiguous statements . . . , and other bits and pieces from
which an inference of discriminatory intent might be drawn,
(2) systematically better treatment of similarly situated
employees, and (3) that the employer's justification is
pretextual." Lewis v. City of Union City, 934 F.3d 1169, 1185
(11th Cir. 2019) (internal quotation marks omitted).

An employee may demonstrate that the employer's "reasons were pretextual by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1348 (11th Cir. 2007) (internal quotation marks omitted). However, "[a] plaintiff cannot show pretext merely by showing that an employer's good faith belief that she engaged in misconduct is mistaken." Foster v. Biolife Plasma Servs., LP, 566 F. App'x 808, 811 (11th Cir. 2014); E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) (holding that, in investigating improper workplace conduct, an employer "is entitled to rely on its good faith belief about falsity, concealment, and so forth"). "[A] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" Springer, 509 F.3d at 1349 (citation omitted). Regardless, "summary judgment should not be granted for failure to demonstrate pretext unless it also reflects a failure to put forward enough evidence for a jury to find for the plaintiff

on the ultimate question of discrimination or retaliation."
Ismael, 161 F.4th at 763 (internal quotation marks omitted).

Here, CSX does not dispute that Mr. Brown has established
a prima facie case of FMLA retaliation by demonstrating: (1)
that he took intermittent FMLA leave; (2) that he was
suspended and later terminated; and (3) that there was a
causal relationship between his use of FMLA leave and CSX's
disciplinary decisions. McAlpin, 61 F.4th at 927.
Accordingly, the burden shifts to CSX to proffer a legitimate
reason for its disciplinary action. Id.

CSX has proffered a legitimate explanation — the
company's determination that Mr. Brown misused FMLA leave —
for its suspension and termination of Mr. Brown. See Total
Sys. Servs., 221 F.3d at 1176 (finding that an employer's
conclusion that an employee lied in an internal investigation
was a legitimate nondiscriminatory reason for termination);
Alexander v. The Bd. of Educ. of City of New York, 648 F.
App'x 118, 120-21 (2d Cir. 2016) (holding that misuse of FMLA
leave is a non-retaliatory basis for dismissal); Medley v.
Polk Co., 260 F.3d 1202, 1207 (10th Cir. 2001) ("[A]n employer
who discharges an employee honestly believing that the
employee has abandoned her job and is otherwise not using
FMLA leave for its here 'intended purpose' . . . would not be

in violation of FMLA, even if its conclusion is mistaken, since this would not be a discriminatory firing."). However, Mr. Brown argues that CSX's proffered reason is merely pretext for its suspension and dismissal of Mr. Brown for taking FMLA leave. The Court agrees with Mr. Brown that a reasonable jury could infer that CSX retaliated against him for using FMLA leave.

Mr. Brown analogizes this case to Parker v. CSX Transportation, Inc., No. 2:18-cv-00274-MHH, 2021 WL 3022703 (N.D. Ala. July 16, 2021), which arose from CSX's termination of another employee, William Parker, for FMLA misuse over Christmas and New Year's Eve 2017. In Parker, CSX offered three bases for its claimed good faith belief that Mr. Parker misused FMLA leave: (1) statistical evidence, (2) the fact that Mr. Parker used FMLA leave on holidays, and (3) Mr. Parker's failure to produce probative medical records. Id. at *14-21. The court determined that Mr. Parker presented evidence contradicting each of CSX's proffered reasons. Id. at *14. The court found that CSX's "*ad hoc* 4-in-10 test for identifying the employees who CSX would investigate further for their presumed FMLA misuse" was problematic because "[o]nly by examining an employee's overall FMLA usage could CSX determine if there was anything suspicious about the use

25

of FMLA leave over several holidays." Id. at *15. The court rejected CSX's contention that Mr. Parker's mark-offs on Christmas, New Year's Eve, and other recent holidays were "inherently suspicious," and determined that, in failing to consider Mr. Parker's full FMLA usage during that period, "[j]urors could find that CSX intentionally avoided evidence in its own records that might contradict its theory of FMLA misuse." Id. at *16-18. Finally, the court rejected CSX's argument that Mr. Parker's credibility was undermined by his failure to provide medical records proving the validity of his FMLA leave over the holidays because CSX admittedly could not require employees to produce such documentation and CSX could have used the recertification process set forth in 29 C.F.R. § 825.308 as a "legitimate tool to obtain medical evidence relating to an employee's use of FMLA leave." Id. at *16-19. The court therefore denied CSX summary judgment on Parker's FMLA retaliation claim because the record contained "disputed questions of fact concerning the reasonableness of CSX's investigation of Mr. Parker's use of FMLA leave over the holidays." Id. at *14, 21.

Mr. Brown argues that "[e]ach of the concerns raised by the court in Parker applies with equal force here." (Doc. # 180 at 14). Specifically, Mr. Brown argues that a reasonable

26

jury could find that CSX's investigations into the Christmas and New Year's Eve charges were "insufficiently reliable to be worthy of credence" because: (1) CSX relied on arbitrary statistics regarding company-wide FMLA usage over the holiday season and regarding Mr. Brown's use of FMLA leave; (2) the mere fact that Mr. Brown had taken FMLA leave on holidays did not make his mark-offs inherently suspicious; and (3) CSX essentially placed the burden on Mr. Brown to prove he did not misuse FMLA leave. (Doc. # 180 at 13-18).

Mr. Brown also argues that the fact that Ms. Johnson did not charge employees who had cancer, were terminally ill, or were about to give birth with FMLA misuse over the Christmas and New Year holidays "belies the claim that CSX was simply engaged in a neutral application of its policies" as "CSX does not and cannot point to any reason to believe these individuals marked off FMLA leave honestly while others lied." (Id. at 18). Mr. Brown posits that a reasonable jury could "infer that CSX sought to avoid applying what it recognized was a draconian and imperfect disciplinary purge to employees whose plight might be particularly sympathetic." (Id.).

Mr. Brown cannot "get to a jury by merely criticizing CSX's investigation." Adams v. CSX Transportation, Inc., No.

2:18-cv-00319-RDP, 2020 WL 1285544, at *9 (N.D. Ala. Mar. 18, 2020) (granting CSX summary judgment on an FMLA retaliation claim arising from CSX's suspension of an employee for FMLA misuse on Christmas 2017 where employee did not point to "any Rule 56 evidence that suggests that CSX's belief that he misused FMLA leave, even if in error, was not in good faith"). Courts "are not in the business of adjudging whether employment decisions are prudent or fair." Damon v. Fleming Supermarkets Of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). "Instead, our sole concern is whether unlawful [retaliatory] animus motivates a challenged employment decision." Id. The Eleventh Circuit has "repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law." Id. When improper conduct is reported, "the employer can lawfully ask: is the accusation true?" Total Sys. Servs., 221 F.3d at 1176. "When the resulting employer's investigation . . . produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions — that is, to accept one as true and to reject one as fictitious — at least, as long as the choice is an honest choice." Id. "And, in carrying out its business and in making business decisions (including personnel decisions),

28

the employer can lawfully act on a level of certainty that might not be enough in a court of law." Id. "[A]n employer, in these situations, is entitled to rely on its good faith belief about falsity, concealment, and so forth." Id.

However, CSX's "systematically better treatment of similarly situated employees" with other serious health conditions – those with cancer, terminal illness, or in late pregnancy – is circumstantial evidence that would allow a jury to infer that CSX's disciplinary action against Mr. Brown was retaliation for taking FMLA leave on holidays. See Lewis, 934 F.3d at 1185 (explaining that a convincing mosaic can be shown by, among other things, "systematically better treatment of similarly situated employees"). As Mr. Brown argues, "[c]ancer — unlike depression — does not flare up around the holidays." (Doc. # 180 at 18). Yet CSX categorically did not bring disciplinary charges against employees with cancer and other exempted medical conditions who exhibited the same suspicious pattern of FMLA use as Mr. Brown and employees with other serious health conditions. (2018 Jolanda Johnson Depo. at 144:19-146:5). Exempting a subset of employees with suspicious FMLA usage because they had cancer or were pregnant is incompatible with CSX's purported aim of punishing dishonesty.

Furthermore, at Mr. Brown's first disciplinary hearing, Ms. Johnson did not dispute that Mr. Brown had a serious health condition that could manifest at unforeseeable times. (Doc. # 174-8 at 39:27-32). Ms. Johnson nevertheless maintained that "it was clear that Mr. Brown misused FMLA by using FMLA to avoid working over the Christmas holiday in 2017" merely because he had taken FMLA leave on certain days. (Id. at 24:4-7, 30:35-45, 39:27-32). Ms. Anderson echoed this position at the second hearing. (Doc. # 174-10 at 23:8-14). Mr. Brown denied the charges, asserting that he only took FMLA leave when he needed it. (Doc. # 174-8 at 47:25-34; Doc. # 174-10 at 30:40-31:4, 32:18-24, 35:11-13). Viewing the facts in the light most favorable to Mr. Brown and drawing all reasonable inferences in his favor, a jury could reasonably infer that CSX did not terminate Mr. Brown based on its good faith belief that he dishonestly took FMLA leave but rather that CSX retaliated against Mr. Brown for taking FMLA leave on days when the company had high FMLA usage.

Accordingly, the Motion is denied as to the FMLA retaliation claim.

### C.   **FMLA Interference**

As Mr. Brown "received all the FMLA leave he requested and was terminated afterward for suspected fraud, . . . the

essence of [his] claim is retaliation, not interference."
LaBelle v. Cleveland Cliffs, Inc., 784 F. App'x 437, 443 (6th
Cir. 2019); see Stallings v. Hussmann Corp., 447 F.3d 1041,
1051 (8th Cir. 2006) (finding that plaintiff's FMLA claim was
"one of retaliation instead of interference" where the
employer granted all plaintiff's requests for FMLA leave and
where plaintiff later was fired for fraudulently taking FMLA
leave); Parker, 2021 WL 3022703, at *22 ("Mr. Parker's
interference theory is not really that CSX prohibited him
from taking FMLA leave but that CSX disciplined him for doing
so. Therefore, Mr. Parker's FMLA interference claim is
'essentially the same as' and 'is largely a clone of [his]
FMLA retaliation claim.'" (quoting Hawkins v. BBVA Compass
Bancshares, Inc., 613 F. App'x 831, 8441 (11th Cir. 2015)).

Thus, as the parties acknowledge (Doc. # 174 at 27-28;
Doc. # 180 at 20), Mr. Brown's claim "is fundamentally a claim
for retaliation and should be analyzed as such." Stallings,
447 F.3d at 1051. Because this claim is duplicative of the
existing retaliation claim, summary judgment is granted on
Count I.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

31

Defendant CSX Transportation, Inc.'s Motion for Summary Judgment (Doc. # 174) is **GRANTED** in part and **DENIED** in part. Summary judgment is granted in favor of CSX Transportation, Inc., on Count I. The case will proceed to trial on Count II.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 23rd day of January, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE