UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW BROWN,

      Plaintiff,

v.                         Case No. 8:24-cv-2777-VMC-LSG

CSX TRANSPORTATION, INC.,

      Defendant.

_____/

**ORDER**

This matter is before the Court on consideration of Defendant CSX Transportation, Inc.'s Motion to Exclude Opinions and Testimony of Plaintiff's Expert Beth De Lima (Doc. # 175), filed on October 14, 2025. Plaintiff Andrew Brown responded on November 12, 2025. (Doc. # 181). CSX replied on December 4, 2025. (Doc. # 187). The Motion is granted in part and denied in part.

## I. Background

Mr. Brown initiated this action after he was terminated from his employment with CSX, asserting claims of FMLA interference and FMLA retaliation. (Doc. # 149). In the amended complaint, Mr. Brown alleges that CSX violated his rights under the FMLA by subjecting him to CSX's attendance policy and by suspending and ultimately terminating him for

1

taking FMLA leave. (Doc. # 149 at ¶¶ 48, 51). The Court has since dismissed Mr. Brown's claims related to the attendance policy and granted CSX summary judgment on the FMLA interference claim. (Doc. ## 153, 161, 193). Thus, only Mr. Brown's FMLA retaliation claim remains.

The case then proceeded through discovery. Mr. Brown hired Beth De Lima, a "Human Resource / Vocational Rehabilitation consultant," to offer an expert opinion on whether CSX "met Human Resources Industry Standards of Care regarding the implementation of FMLA." (Doc. # 175-2 at ¶¶ 1, 6). Ms. De Lima has various human resources (HR) certifications and has been working in HR management for more than 30 years. (Id. at ¶¶ 2-3). Ms. De Lima's report states as follows. "[T]here are recognized and generally accepted Human Resources practices, along with ethical and professional standards, set forth by the Society for Human Resource Management (SHRM)." (Id. at ¶ 5). The FMLA sets forth steps an employer must take if it finds an employee's certification of his or her need for FMLA leave incomplete or insufficient. (Id. at ¶ 35). The FMLA requires the employer to give the employee an opportunity to cure the deficiency. (Id.). "Once the employee is notified of the need to cure a medical certificate, it is the employee's responsibility to

work with their medical provider to furnish a complete and sufficient medical certificate or provide authorization to the medical office to release a medical certification to the employer to confirm the eligibility of the FMLA request." (Id. at ¶ 37). "If the employer still believes the medical certificate is inadequate to justify the pattern of FMLA usage, the next step would be a Second and Third . . . medical opinion from a Qualified Medical Examiner, not an employee at CSX." (Id.).

Ms. De Lima opines that "[t]here is no justification under the FMLA or HR Industry Standards of Care that supports bypassing the Curing and Second or Third opinion process and puts the decision in the hands of untrained HR personnel, biased company specific investigators, an ignorant Benefits Manager, and / or a FMLA internal consultant – to make a decision whether an employee is abusing FMLA." (Id. at ¶ 47). The statements of Sky Shepherd, Jolanda Johnson's "HR assistant," that recertification "'has nothing to do with'" investigating whether an employee dishonestly used FMLA leave for an approved serious health condition "highlight an overall ignorance and lack of understanding by CSX and HR on how to resolve perceived fraudulent and misuse patterns of FMLA usage for employees with ongoing, as needed FMLA medical

leave certificates." (Id. at ¶ 50). Ms. De Lima opines that CSX's policy regarding FMLA usage on holidays "flies in the face of FMLA and the Curing process FMLA established as well as HR Industry Standards of Care." (Id. at ¶ 52). Finally, Ms. De Lima opines that CSX's directive "to curb and discourage and interfere with an employee's usage of FMLA" led "to mass layoffs of seasoned, tenured, decade long employees" "as a result of the organization[']s failure to ensure they implement HR Industry Standards of Care for a federally protected employee leave benefit known as the [FMLA]." (Id. at ¶ 54).

Now, CSX moves to exclude the opinions and testimony of Ms. De Lima. (Doc. # 175). Mr. Brown has responded (Doc. # 181), and CSX has replied. (Doc. # 187). The Motion is ripe for review.

## II.  **Legal Standard**

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

4

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

III. **Analysis**

CSX challenges the reliability of Ms. De Lima's testimony and opinions, as well as their helpfulness to the trier of fact. CSX also argues that Ms. De Lima's testimony should be excluded pursuant to Rule 403. The Court addresses each contention in turn.

A. **Opinions Unrelated to Whether CSX Had a Good Faith Belief that Mr. Brown Dishonestly Used FMLA Leave During the 2017-2018 Holidays**

As an initial matter, the Court notes that Ms. De Lima's report includes opinions on matters that were never at issue or are no longer at issue in this case, including CSX's attendance policy and the ADA. (Doc. # 175-2 at ¶¶ 9-10, 14-15, 21, 25-26, 29, 33, 36, 40, 42, 45-47, 49, 52-53, 55). CSX argues that these opinions should be excluded as the Court has "dismissed the attendance policy claims" and as "there is no ADA claim in this case." (Doc. # 175 at 7). CSX also argues that Ms. De Lima's testimony on the "implications of CSX's policies regarding misuse of FMLA leave on weekends and to extend time off" should be excluded as they are irrelevant to the issue in this case – whether CSX had a good-faith belief that Brown dishonestly used FMLA leave over Christmas 2017 and New Year's 2018." (Id.).

6

The Court agrees that Ms. De Lima's opinions regarding the attendance policy and the ADA should be excluded. As there are no claims regarding the attendance policy or the ADA, Ms. De Lima's opinions about those issues are excluded as irrelevant and unhelpful to the jury.

However, the Court does not agree that Ms. De Lima's testimony about CSX's policies regarding FMLA leave on weekends and to extend time off are irrelevant. Although Mr. Brown was terminated because of FMLA misuse over the 2017-2018 end-of-year holidays, CSX's decision to charge Mr. Brown with FMLA misuse during that period was partially based on the fact that CSX previously had warned Mr. Brown that he was improperly using FMLA leave either before or after his rest days and on weekends. (Doc. # 174-8 at 22:6-12, 32:30-33). Under the circumstances, it cannot be said that Ms. De Lima's testimony about the implications of CSX's policies regarding FMLA use on weekends and to extend time off would not logically advance a material aspect of Mr. Brown's case. Indeed, this evidence is probative of whether CSX had a good faith belief that Mr. Brown dishonestly used FMLA leave over the 2017-2018 holidays. See Allison v. McGhan, 184 F.3d 1300, 1312 (11th Cir. 1999) (explaining that expert testimony must

"logically advance[] a material aspect of the proposing party's case." (internal quotation marks omitted)).

The Motion is granted to the extent Ms. De Lima's opinions unrelated to the remaining issue in this case are excluded.

### B. Reliability

CSX argues that Ms. De Lima's opinions and testimony are not reliable because: (1) Ms. De Lima does not cite specific sources of the "HR Industry Standards" she purports to apply, (2) her testimony is not based on sufficient facts or data, (3) she makes broad conclusions from unrepresentative samples, and (4) her report contains many errors and mischaracterizes the record. (Doc. # 175 at 15-23). The Court is not persuaded.

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

8

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

Contrary to CSX's contention, Ms. De Lima identifies the standards set forth by SHRM as the source of the "HR Industry Standards" on which she relies. (Doc. # 175-2 at ¶¶ 5-6). "[A]n expert may opine as to whether one party or another acted in compliance with industry standards." Sec. & Exch.

Comm'n v. Bankatlantic Bancorp, Inc., No. 12-60082-CIV, 2013 WL 12009694, at *4 (S.D. Fla. Nov. 14, 2013) (internal quotation mars omitted). Accordingly, this is not a basis for finding Ms. De Lima's methodology unreliable. See Doe v. Willis, No. 8:21-cv-1576-VMC-CPT, 2023 WL 2799747, at *8 (M.D. Fla. Apr. 5, 2023) ("Mr. Millwee's methodology is reliable. Mr. Millwee used his training and experience with security industry standards to determine whether Swift complied with those standards with respect to its treatment of Willis. He relied on industry standards compiled by ASIS, the Society for Human Resource Management ('SHRM'), and the American National Standards Institute ('ANSI')." (internal citation omitted)).

CSX further argues that to the extent Ms. De Lima "claims she relied on her experience to develop these supposed standards, her testimony and opinions are unreliable because she failed to explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" (Doc. # 175 at 17) (quoting Frazier, 387 F.3d at 1262). The Court disagrees.

Ms. De Lima explained in her report that she applied generally accepted HR standards as set forth by SHRM, "an

10

organization founded in 1948" that "has over 285,000 members across more than 165 countries and more than 575 chapters in the United States." (Doc. # 175-2 at ¶¶ 5-6). Ms. De Lima stated that these standards "are further supported by other leading organizations in the Human Resources industry, such as the United States Chamber of Commerce, National Employment Law Institute (NELI), Equal Employment Opportunity Commission (EEOC), U.S. Department of Labor (DOL), American Bar Association, and numerous white papers and blogs by prominent legal firms." (Id. at ¶ 5). Ms. De Lima stated that she has "served in the Human Resource management profession for over 30 years and [has] been working with both the American with Disabilities Act (ADA) and Family Medical Leave Act (FMLA) regulations throughout that period." (Id. at ¶ 3). Ms. De Lima further stated that, as a "Human Resource Management Consultant, [she] provide[s] training workshops and webinars regarding HR Industry Standards for implementing FMLA, ADA and related personnel management regulations to the [SHRM] chapters, the International Public Management Association for Human Resources (IPMA), private, non-profit and public companies, as well as trainings for other industry professionals." (Id. at ¶ 4). Ms. De Lima, therefore, explained "how" her experience "leads to the conclusion

11

reached, why that experience is a sufficient basis for the opinion . . . [and] how that experience in reliably applied to the facts." Frazier, 387 F.3d at 1261; see Mueller v. Daugherty Sys., Inc. d/b/a Daugherty Bus. Sols., No. 1:18-cv-3358-MLB, 2021 WL 3754582, at *5 (N.D. Ga. June 14, 2021) (finding an HR expert's methodology to be sufficiently reliable where she explained that she applied generally accepted relevant industry standards and described how she knew those standards were generally accepted).

Next, CSX argues that Ms. De Lima's testimony is not based on sufficient facts or data. (Doc. # 175 at 17-18). CSX notes that Ms. De Lima "asserts that there was a 'clear directive by management . . . to curb and discourage and interfere with an employee's usage of FMLA,' and claims that this is supported by '[Ms.] Johnson's and [Tremaylen] Anderson's own testimony,' but does not cite anything specific." (Id.) (quoting Doc. # 175-2 at ¶ 54). However, CSX does not claim that Ms. De Lima has misrepresented Ms. Johnson and Ms. Anderson's testimony or that this portion of the report is an impermissible characterization of the evidence. CSX also argues that Ms. De Lima "makes other unsupported assertions that certain documents implicitly or explicitly embody nefarious principles they plainly do not, including

12

that 'verbiage in the employee's FMLA eligibility and notification letter' was 'specifically designed to restrict the days employees can take mandatory FMLA leave,' and that CSX's disciplinary policy . . . 'explicitly punish[es] employees for taking lawful, mandatory FMLA leave.'" (Id. at 18) (quoting Doc. # 175-2 at ¶¶ 12, 14). Although CSX may disagree with Ms. De Lima's interpretation of the letter and the disciplinary policy, CSX has not demonstrated that it is unreliable.

CSX further argues that Ms. De Lima's opinions and testimony are unreliable as "there is simply too great an analytical gap between the data and the opinion proffered." (Id. at 19) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). Specifically, CSX argues that Ms. De Lima "draws sweeping conclusions about CSX's handling of discipline and leave administration for [Mr.] Brown based on isolated and dissimilar episodes involving other CSX employees." (Id.). Although Ms. De Lima references CSX's handling of discipline of two other employees, (Doc. # 175-2 at ¶¶ 28, 53), a review of Ms. De Lima's report demonstrates that she did not base her opinions on CSX's handling of the other cases. Ms. De Lima's opinion that CSX failed to comply with "HR Industry Standards of Care" by failing to comply with the FMLA "Curing

13

Process" and by allowing "untrained HR personnel, biased company specific investigators, an ignorant Benefits Manager, and / or a FMLA internal consultant . . . to make a decision whether an employee is abusing FMLA" is not dependent on CSX's treatment of the other two employees. (Id. at ¶ 47). Therefore, CSX has not demonstrated that there "is too great an analytical gap between the data and the opinion proffered." Joiner, 522 U.S. at 146.

Finally, CSX argues that Ms. De Lima's testimony and opinions are unreliable because her report is replete with errors and mischaracterizes the record. (Doc. # 175 at 21-23). CSX claims that the report inaccurately states that "CSX's FMLA policy says that 'if FMLA is utilized in a manner [CSX] deems to impact the staffing of the organization' then the 'approved use of FMLA leave will be documented as negative attendance'" under CSX's attendance policy. (Id. at 21) (quoting Doc. # 175-2 at ¶ 9). As the Court has determined that Ms. De Lima's testimony about the attendance policy will be excluded, this issue is moot.

CSX identifies three other alleged factual inaccuracies or mischaracterizations in Ms. De Lima's report. First, CSX states that Ms. De Lima grossly mischaracterized the record when she asserted that, "in 2016, CSX's HR Department informed

14

employees that 'utilizing FMLA leave would be reported as misuse'" (Doc. # 175 at 21) (quoting Doc. # 175-2 at ¶ 16), as the letter actually stated that "[u]sing FMLA leave to avoid certain work assignments, to extend time off . . . , to be off on a holiday, the weekend, or to avoid working overtime is considered not only misuse, but fraudulent use of this federally required benefit." (Doc. # 174-11 at 13).

Second, CSX contends Ms. De Lima's statement that "CSX made no 'effort to determine if the FMLA use was consistent with the already approved medical certificates for the impacted employees' and never requested documentation from employees 'to clarify the validity of the FMLA usage'" conflicts with Ms. Johnson's testimony that, "before charging employees, [Ms.] Johnson reviewed the medical reasons for leave to determine whether they clearly explained a need for leave over the holidays." (Doc. # 175 at 21-22) (quoting Doc. # 175-2 at ¶ 20). CSX further notes that the disciplinary hearings "were employees' opportunity to explain the need for FMLA over the holidays, including by presenting medical documentation if they so desired." (Id. at 22).

Third, CSX challenges Ms. De Lima's statement that "'[a]s an alternative to complying with [the] FMLA process for curing, [CSX] is simply ignoring the need to determine if

15

the need for FMLA leave can be confirmed by curing the medical certificate and just moves on with the termination.'" (Id.) (quoting Doc. # 175-2 at ¶ 23). The portion of Ms. De Lima's report immediately preceding the challenged language discusses a CSX internal email explaining a hearing officer's options if an employee offers medical documentation in his or her defense at a hearing: (1) "[a]sk the union if they would like a postponement . . . to allow Ms. Johnson and the Medical Department to review the documentation," or (2) "[p]roceed with the investigation, and recall Ms. Johnson to state on the record that she and Medical will review and make a determination about the documentation after the hearing." (Doc. # 175-2 at ¶ 23).

None of the alleged factual discrepancies or mischaracterizations warrant excluding Ms. De Lima's opinions and testimony. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Coquina Invs. v. Rothstein, No. 10-60786-CIV, 2011 WL 4949191, at *8 (S.D. Fla. Oct. 18, 2011) (quoting Synergetics, Inc. v. Hurst, 477 F.3d 949, 955–56 (8th Cir. 2007)). Accordingly, to the extent the challenged portions of

16

Ms. De Lima's report conflict with the record evidence, this goes to the weight rather than the admissibility of her testimony.

The Court finds Ms. De Lima's methodology sufficiently reliable. The alleged flaws in Ms. De Lima's methodology raised by CSX should be addressed during cross-examination. See Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)). Thus, the Motion is denied as to reliability.

### C.   **Assistance to the Trier of Fact**

Next, CSX argues that Ms. De Lima's "opinions – off-base critiques of whether CSX engaged in a 'curing process,' adequately trained its managers, and abided by 'HR Industry Standards'" – are not relevant to the question of whether Mr. Brown was subject to unlawful retaliation. (Doc. # 175 at 6). CSX also argues that Ms. De Lima's testimony should be excluded because she "offers improper legal conclusions dressed up as expert opinions" and "usurps the role of the

17

jury by attempting to substitute her own perception of evidence" (Id. at 7, 13).

Expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). "[T]he court must ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e. , that it logically advances a material aspect of the proposing party's case." Allison, 184 F.3d at 1312 (internal quotation marks omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).

To succeed on an FMLA retaliation claim, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001). Here, the primary issue for the jury to determine is whether CSX terminated Mr. Brown based on its good faith belief that he dishonestly took FMLA leave or

18

whether, as Mr. Brown contends, CSX retaliated against him for taking FMLA leave on days when the company had high FMLA usage. Mr. Brown asserts that Ms. De Lima's "opinions regarding HR Industry Standards are relevant because they help the trier of fact understand industry norms for investigating FMLA leave abuse." (Doc. # 181 at 9). Mr. Brown contends that Ms. De Lima's testimony "provides a backdrop that will help the jury understand what is typical practice which may inform their finding as to whether CSX's divergence from these norms is evidence of bad faith and dishonest belief." (Id. at 9-10). The Court agrees with Mr. Brown.

From Ms. De Lima's testimony that CSX's investigation fell below HR industry standards, a jury could infer that CSX did not have a good faith belief that Mr. Brown dishonestly took FMLA leave over the 2017-2018 end-of-year holidays and that CSX terminated Mr. Brown in retaliation for taking FMLA leave during that period. Accordingly. Ms. De Lima's opinion on whether CSX complied with industry standards in investigating suspected FMLA misuse would be helpful to the jury. See Mueller, 2021 WL 3754582, at *1, 8 (finding that an HR expert's testimony that the employer's internal investigation into plaintiff's claims of discrimination fell below industry standards would be helpful to the jury in

determining whether the employer's stated reasons for terminating plaintiff were legitimate or pretextual); Humphreys v. Regents of Univ. of California, No. C 04-03808 SI, 2006 WL 1867713, at *2 (N.D. Cal. July 6, 2006) (finding that expert's "proposed testimony about the University's deviation from good human resources practices is proper expert testimony under Rule 702" as the "University's failure to follow such practices is relevant to plaintiff's contention that the layoff was a pretext for gender discrimination or retaliation, and [the expert's] testimony will assist the jury because the average juror is unlikely to be familiar with human resources management policies and practices"). CSX may address the alleged flaws in Ms. De Lima's opinions on cross-examination.

However, CSX is correct that "[n]o witness may offer legal conclusions or testify to the legal implications of conduct." Dudash v. S.-Owners Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017); see also Santos v. Experian Info. Sols., Inc., No. 19-23084-CIV, 2021 WL 6144643, at *5 (S.D. Fla. Nov. 30, 2021) (holding that expert may testify as to "whether Experian's procedures match industry standards" but "may not testify about whether Experian's existing procedures or conduct were unreasonable,

20

reckless, inadequate, or offer any other legal conclusion." (internal quotation marks omitted)); Zabriskie v. Fed. Nat'l Mortg. Ass'n, No. CV-13-02260-PHX-SRB, 2016 WL 3653512, at *2 (D. Ariz. Apr. 22, 2016) (finding that expert may opine that "Fannie Mae has implemented 'unreasonable' procedures that 'disregard[] well-known industry standards for characterizing and reporting consumer credit data'" but may not opine "as to whether these procedures should be considered 'unreasonable' under the FCRA, because this is an ultimate issue that will be decided by the jury"). But the Eleventh Circuit has acknowledged that "the distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive." Hanson v. Waller, 888 F.2d 806, 811 (11th Cir. 1989).

Here, Ms. De Lima's report contains many legal conclusions. Ms. De Lima frequently opines or implies that CSX's policies and procedures regarding suspected FMLA misuse violate the FMLA. (Doc. # 175-2 at ¶¶ 28, 32, 36, 40, 42, 44, 46-47, 51). Ms. De Lima also offers her interpretation of an employer's obligations under the FMLA. (Id. at ¶¶ 31-38). The Court agrees with CSX that it would be improper to allow Ms. De Lima to testify about these issues at trial as they are

21

legal conclusions. See United States Sec. & Exch. Comm'n v. Spartan Sec. Grp., Ltd, No. 8:19-cv-448-VMC-CPT, 2020 WL 7024885, at *7 (M.D. Fla. Nov. 30, 2020) ("The Court agrees that Mr. Harmon's statement improperly interprets transfer agents' obligations and requirements under state and federal law."); United States v. Gay, 576 F.2d 1134, 1137 (5th Cir. 1978) ("In addition, expert testimony offered by the defense concerning the requirements of [26 U.S.C. § 7512] was properly excluded. Gay's legal obligations in the circumstances were a matter for instructions from the trial court and not properly a subject for testimony by an expert witness."). Ms. De Lima may still opine that CSX did not comply with industry standards in investigating suspected FMLA misuse as that is not a legal conclusion.

Finally, CSX argues that Ms. De Lima's opinions and testimony should be excluded because Ms. De Lima "usurps the role of the jury by attempting to substitute her own perception of evidence." (Doc. # 175 at 13). CSX contends that Ms. De Lima's "conclusions that CSX's investigators were biased and/or did not receive training on how to conduct a fair and impartial investigation under the FMLA" are "improper opinions on issues within the sole province of the jury." (Id. at 14) (citing Doc. # 175-2 at ¶¶ 24, 32(d),

22

35(a), 42). CSX also challenges Ms. De Lima's statement that the "focus in the . . . Investigations seems to be the impact of the employee's FMLA leave on the operations of the railroad's workforce availability when employees are utilizing FMLA." (Id. at 15) (quoting Doc. # 175-2 at ¶ 19). The Court is not persuaded.

"'[A]n expert may testify as to his opinion on an ultimate issue of fact,' provided that he does not 'merely tell the jury what result to reach' or 'testify to the legal implications of conduct.'" United States v. Grzybowicz, 747 F.3d 1296, 1310 (11th Cir. 2014) (quoting Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990)). Here, the challenged portions of Ms. De Lima's report may factor into the jury's determination on whether CSX had a good faith belief that Mr. Brown misused FMLA leave, but they do not merely tell the jury what result to reach. Accordingly, this is not a basis for excluding Ms. De Lima's opinions and testimony. See United States v. Duldulao, 87 F.4th 1239, 1269 (11th Cir. 2023) ("There is a difference between opining on an ultimate issue and impermissibly directing the jury to a result.").

**D.    <u>Rule 403</u>**

In the alternative, CSX argues that Ms. De Lima's testimony should be excluded pursuant to Rule 403 because it is unfairly prejudicial, confuses the issues, and would mislead the jury. (Doc. # 175 at 23-25). CSX contends that Ms. De Lima's report contains language that is "inflammatory" and "over-the-top." (<u>Id.</u> at 23-24). CSX further argues that Ms. De Lima's "confused report" is not relevant as it "misunderstands both the applicable regulation and the issues in this case." (<u>Id.</u> at 24). However, as Ms. De Lima is expected to testify at trial (Doc. # 199 at Ex C at 2), her "opinions will be presented via [her] sworn testimony, and [her] report may be used to refresh [her] recollection or for impeachment, but the report itself is hearsay and is not admissible." <u>Johnston v. Borders</u>, No. 6:15-cv-936-PGB-DCI, 2018 WL 4215027, at *1 (M.D. Fla. Sept. 4, 2018). Therefore, this is not grounds to exclude Ms. De Lima's testimony at trial. Any Rule 403 issues that arise due to Ms. De Lima's testimony can be addressed at trial.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

24

(1)  Defendant CSX Transportation, Inc.'s Motion to Exclude Opinions and Testimony of Plaintiff's Expert Beth De Lima (Doc. # 175) is **GRANTED** in part and **DENIED** in part.

(2)  Ms. De Lima may not offer opinions on topics no longer at issue in this case, including CSX's attendance policy and the ADA. Additionally, Ms. De Lima may not offer legal conclusions during her testimony.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of February, 2026.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE